UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOREENA BROOKS,

       Plaintiff/Counter-Defendant,

                                       Case No. 09-cv-10352
v.                                    United States District Judge Paul D. Borman
                                      Magistrate Judge Donald A. Scheer

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, a foreign insurance company,

       Defendant/Counter-Plaintiff.

_____/

OPINION AND ORDER GRANTING DEFENDANT/COUNTER-PLAINTIFF
LIBERTY MUTUAL FIRE INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56

Now before the Court is Defendant/Counter-Plaintiff Liberty Mutual Fire Insurance

Company's ("Liberty Mutual") Motion for Summary Judgment pursuant to Federal Rule of Civil

Procedure 56.  A hearing was held on December 18, 2009.  For the following reasons, the Court

GRANTS Liberty Mutual's Motion for Summary Judgment and awards Liberty Mutual $30, 838.03,

the amount Plaintiff was unjustly enriched from payments by Defendant/Counter-Plaintiff.

I.      **BACKGROUND**

      A.      **Plaintiff's December 26, 2007 Liberty Mutual Application**

This matter arises out of an insurance contract entered into between Plaintiff and Liberty

Mutual covering Plaintiff's dwelling located at 21320 Redmond Avenue, Eastpointe, Michigan (the

"Property").  In a Supplement Application for insurance, completed on December 26, 2007, Plaintiff

represented that she had not been denied payment of a homeowner's insurance claim of more than

$2,000.00 in the five (5) years preceding the application. ( Mot. Ex. A.)  Further in the Supplement

Application, Plaintiff answered "yes" to question 13, which asked: "During the past five years, have

you or other occupants of the premises had a claim or loss?"  (Mot. Ex. A.)  Question 13 asks that

the applicant provide details of any non-automobile claim or loss identified, which Plaintiff did not

provide.  (*Id.*) Plaintiff further specifically attested, when signing the Supplement Application: "I

hereby declare to the best of my knowledge and belief that all of the foregoing statements are true

and that these statements are offered as an inducement to the company to issue the policy for which

I am applying."  (*Id.*)

The final page of the Supplement Application bears, in pertinent part, the following legend,

just above the line where Plaintiff affixed her signature and the date: "If any questions appearing

above, or elsewhere on this application, have been answered falsely or fraudulently, this entire

insurance is null and void and all claims thereunder shall be forfeited."  (*Id.*)  In reliance on the

statements contained in Plaintiff's application, Liberty Mutual issued policy number H32-248-

149757-407 3, effective December 16, 2007, covering the Property and providing some additional

coverages,  for an annual premium of $1,175.00.  (Mot. Ex. B, "the Policy".)

Due to Plaintiff's non-payment of premiums, the Policy was set for cancellation effective

July 29, 2008. (Mot. Ex. D.)  On or about July 27, 2008, just two days before the cancellation was

to become effective, Plaintiff's home was damaged in a fire, and Plaintiff made a claim on the Policy

for damage to the property and for alternative living expenses.  (Mot. 3, ¶ 8; Ex. J, Cape Aff. ¶ 2.)

Liberty Mutual commenced an investigation into the fire, expending the sum of $3,303.65,  to

determine what, if any, sums were due to Plaintiff under the Policy**.**  (Mot. Ex. E.)  In addition,

Liberty Mutual advanced to Plaintiff the sum of $27,534.38 for building damage, personal property

damage and alternate living expenses.  (Mot. Ex. E.)   In total, Liberty Mutual expended $30,838.03

on Plaintiff's claim before it confirmed that Plaintiff had made a misrepresentation on her December

26, 2007 application for benefits.  To reiterate, Plaintiff answered "no" to question number 3 on the

Supplement Application, which asks: "Within the last five years, have you been denied payment of

a home insurance claim of more than $2,000?"   In fact, as Liberty Mutual discovered after

expending the above amounts on Plaintiff's claim, Plaintiff had been denied**,** on April 17, 2007, a

homeowner's insurance claim that she made with State Farm in June, 2006.  (Mot. Ex. A.)

**B.      Plaintiff's June 2006 Claim With State Farm**

In reviewing the prior State Farm claim, Liberty Mutual discovered that Plaintiff had been

denied coverage on her claim of theft of multiple personal items from her automobile because: (1)

Plaintiff refused to submit to an examination under oath regarding the claim, and (2) Plaintiff made

material misrepresentations in the course of State Farm's investigation.  (Mot. Ex. C.)  In its letter

to Plaintiff denying her claim and cancelling her State Farm policy, State Farm explained that it was

relying in part on the concealment/fraud provision of the policy, which gave State Farm the right

to void the policy based upon discovery of an intentional concealment or misrepresentation.  (*Id*.)


In support of its Motion, Liberty Mutual attaches the Affidavit of Paul H. Johnson, Jr., an

attorney who assisted State Farm in the investigation of Plaintiff's claim.  (Mot. Ex. G, Johnson Aff.

¶ 1-3.)  According to Mr. Johnson's affidavit, Plaintiff contacted State Farm on June 14, 2006 to

report that her vehicle had been stolen and that it contained numerous articles of personal property

including jewelry, luggage and a computer.  (*Id*. ¶ 4.)  Shortly after filing her claim with State Farm,

Plaintiff submitted a five page handwritten inventory of the articles she claimed had been stolen in

the theft, totaling $12,227.00 and including diamond earrings, a diamond ring, a diamond bracelet and a Dell computer.  (*Id*. ¶¶  5, 6.)  Plaintiff states in her affidavit that luggage, jewelry and other articles of personal property were in the vehicle at the time it was stolen because she was leaving on vacation the following morning.  (Resp. Ex. G, Brooks Aff. ¶ 3.)

Mr. Johnson further testifies that his investigation disclosed that the allegedly stolen vehicle had been recovered with no signs of forced entry or damage to the ignition or steering column.  Plaintiff states in her affidavit that she had no knowledge that the vehicle was recovered and that she never gained possession of the vehicle after the theft. (Resp. Ex. G, Brooks Aff. ¶ 4.)  Mr. Johnson's investigation also disclosed that Plaintiff had presented two prior claims for theft to two different insurance companies in 2005 and 2006.  (Mot. Ex. G, Johnson Aff. ¶ 7.)  One of the prior claims made by Plaintiff which State Farm discovered in its investigation, a 2005 claim with AAA, claimed the theft of the same items of personal property (diamond tennis bracelet, diamond earrings and diamond ring) that were allegedly stolen in the State Farm claim.  (*Id.*)  Plaintiff attempts to explain this coincidence in her affidavit, stating that some of the items claimed in her State Farm claim were replacement items "from a previous insurance claim [made through AAA] regarding the theft of this vehicle in 2005."  (Resp. Ex. G, Brooks Aff. ¶ 5.)[1]   Mr. Johnson further discovered while

---

[1] Plaintiff offers no documentary support for her contention that these were replacement items from a previous auto theft in 2005 made through AAA.  In fact, the documents signed by Plaintiff in connection with a 2005 claim made through AAA indicate that the loss was as a result of a home break-in, not an auto theft. (Mot. Ex. I.)  A comparison of the inventory of lost items completed by Plaintiff in connection with both the 2005 AAA claim and the 2006 State Farm claim reveal several inconsistencies that belie Plaintiff's affidavit testimony.  First, in the 2005 AAA claim, Plaintiff listed the tennis bracelet as having been 4 years old and having a replacement cost of $900, the cluster ring as having been 7 (or 9) years old and having a replacement cost of $250 and the diamond stud earrings as having been 9 years old and having a replacement cost of $400.  (*Id*.)  Plaintiff states in her affidavit in the instant case that these items were replaced after the 2005 loss.  (Resp. Ex. G, Brooks Aff. ¶ 5.) This statement is directly contradicted, however, by Plaintiff's inventory of stolen

investigating the State Farm claim that Plaintiff had filed for bankruptcy in March of 2006, three

months before the alleged June 2006 theft of her car, and had represented at that time that she owned

no jewelry or computer equipment. (Mot. Ex. G, Johnson Aff. ¶ 7.)  Through the months of

September and October, State Farm attempted to examine Plaintiff under oath regarding her claim

but Plaintiff failed to appear and failed to produce any verification of her acquisition of the personal

property included in her claim. (*Id*. ¶¶ 8-12.)  On April 17, 2007, State Farm notified Plaintiff that

it denied the claim and declared the policy void, relying in part on the concealment and fraud

provisions of the policy. (*Id*. ¶¶ 13, 14; Mot. Ex. C.)  Plaintiff does not deny that State Farm denied

the claim but states that State Farm refused to accommodate her work schedule when it attempted

to arrange her examination under oath. (Resp. Ex. E, Brooks Aff. ¶¶ 6-8.)

### C.    Liberty Mutual's Rescission of the Policy and Denial of Plaintiff's Claim

Based upon Plaintiff's misrepresentation to Liberty Mutual in her December 26, 2007

application for insurance that she had not been denied coverage on a homeowner's claim in excess

of $2,000.00 in the past five years, Liberty Mutual notified Plaintiff on October 9, 2008 that it was

rescinding the Policy, declaring it to be null and void and denying coverage on Plaintiff's July 27,

---

items for the State Farm loss a year later, which lists the tennis bracelet as having been 12 years old
with a replacement value of $1200, the cluster ring as having been 10 years old and having a
replacement value of $500 and the diamond stud earrings as having been 5 years old with a
replacement value of $500. If these were in fact replacement items, each should have been listed
in the State Farm application as having been purchased within the last year and certainly could not
have grown significantly older (or younger) than originally claimed on the AAA loss! (E.g., in the
space of one year, the tennis bracelet went from being 4 years old to being 12 years old, the diamond
earrings actually became younger, originally 9 years old and a year later, 5 years old.) Significantly,
Plaintiff admits in her affidavit that she made a 2005 claim through AAA (although she states in her
affidavit, without any supporting documentation, that it was an auto theft claim) and does not deny
the authenticity or accuracy of the loss inventories relied upon by Liberty Mutual in support of its
Motion. Indeed Plaintiff does not address them directly at all in her response and makes no attempt
to explain their inherent inconsistencies.

2008 claim.  (Mot. Ex. F; Mot. Ex. J, Cape Aff. ¶ 6.)   Liberty Mutual's letter to Plaintiff, informing

her that the policy was rescinded and her claim denied, states as follows:

> This is to notify you that we are rescinding the above policy and hereby declaring it
> to be null and void as of its effective date of 12/16/07.  Therefore, no insurance exists
> or will be deemed to have existed with Liberty Mutual Fire Insurance Company.
>
> A refund check including the return of all premium paid to the Company for this
> policy, will be mailed to you shortly.
>
> This action has been taken by the company because of what are believed to be
> material misrepresentations on your application for homeowner insurance.
> Specifically, the following information was undisclosed, concealed or otherwise
> misrepresented:
>
>> The fact that your former insurer had sent you a letter which declared
>> your policy to be void and denied your claim, citing concealment or
>> fraud.
>
> Had we known about this information, we would not have issued this policy.

(Mot. Ex. F.)

In rescinding the contract, Liberty Mutual relied on section 2 of the Conditions section of

Plaintiff's policy which provides:

> 2.      Concealment of fraud.  The entire policy will be void if, whether before or
>         after a loss, an "insured" has:
>
>> a.      Intentionally concealed or misrepresented any material fact or
>>         circumstance;
>> b.      Engaged in fraudulent conduct; or
>> c.      Made false statements;
>
> relating to this insurance.

Mot. 5; Mot. Ex. B, Sections I and II - Conditions, p. 15.

In support of its motion, Liberty Mutual attaches the affidavit of Luanne Cape, a Senior

Compliance Analyst for Liberty Mutual.  (Mot. Ex. J, Cape Aff.)  Ms. Cape testifies that she

reviewed the underwriting information pertaining to the decision to rescind the Policy issued to

Plaintiff.  (*Id.* ¶ 2.)  Ms. Cape testifies that Plaintiff's representation that she had not been denied

a homeowner's claim in excess of $2,000 in the five years preceding her application was material

to Liberty Mutual's decision to issue the policy to Plaintiff.  (*Id.* ¶¶ 3, 4.)  Ms. Cape further testifies

that Liberty Mutual would not have written the Policy to Plaintiff had the true and correct

information regarding the State Farm claim been disclosed at the time of her application.  (*Id.* ¶ 5.)

In fact, according to Ms. Cape, had Plaintiff disclosed her claim denial by State Farm, she would

have been ineligible for insurance with Liberty Mutual.  (*Id.* ¶ 7.)  Upon rescinding the Policy,

Liberty Mutual issued a refund check to Plaintiff equal to the entire amount of premium Plaintiff had

paid on the policy.  (*Id.* ¶ 8; Mot. Ex. K.)  Plaintiff cashed the check.

## II.      STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim,

or cross-claim is asserted "may move, with or without supporting affidavits, for summary judgment

on all or part of the claim." Fed. R. Civ. P. 56(b).  Summary judgment is appropriate where the

moving party demonstrates that there is no genuine issue of material fact as to the existence of an

essential element of the non-moving party's case on which the non-moving party would bear the

burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Of course, [the

moving party] always bears the initial responsibility of informing the district court of the basis for

its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Id.* at 323; *See also Gutierrez v. Lynch*, 826 F.2d 1534,

1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, *supra* 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, *supra* 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## III.   ANALYSIS

Liberty Mutual argues that Plaintiff made a material misrepresentation in her application for insurance when she indicated that she had not been denied coverage on a homeowner's claim in

excess of $2,000 in the preceding five years, when in fact she had been denied such a claim by State Farm just a year and a half before completing her application to Liberty Mutual. Liberty Mutual argues that this misrepresentation was material, that it would not have issued the policy had it known of Plaintiff's denial by State Farm and that it properly rescinded the contract under the fraud and concealment provision of the contract and denied the claim.

Plaintiff responds that she informed Liberty Mutual of her prior claims with State Farm and AAA and that Liberty Mutual had a duty to discover her misrepresentation as to the denial by State Farm, which she argues was easily ascertainable based upon her affirmative response to question 13 of the Supplement Application, which inquired whether she or any other occupants of the premises "had a claim or loss." She states in her affidavit that she did not learn of the State Farm denial until after she had filled out the Liberty Mutual application and that there is no evidence that the State Farm denial was based on Plaintiff's misrepresentation or fraud. She argues that therefore there are genuine issues of fact as to whether her alleged misrepresentation was intentional and whether it was material.[2]

---

[2] Plaintiff argues that Liberty Mutual's motion is premature, and that Plaintiff has not had adequate time for discovery. (Resp. 9.) Plaintiff relies on *Aslani v. Sparrow Health Sys.*, No. 08-298, 2009 WL 736654 (March 12, 2009) which involved a plaintiff proceeding *pro se* against four institutional defendants and more than a dozen employees. *Id*. at * 15. At the time of defendants' motion for summary judgment in *Aslani*, plaintiff had yet to serve several of the defendants and the moving defendants had just filed answers two months before they filed their motion. *Id*. The instant case, by contrast, involving just one defendant, was filed in January 2009 and discovery cut-off was October 16, 2009. Liberty Mutual's motion was filed on August 13, 2009, just two months shy of the discovery cut-off date. Plaintiff was given an extension of time in which to respond to Liberty Mutual's motion, and filed her response on September 15, 2009, just one month short of the discovery cut-off.

Further, Plaintiff could have, but did not, seek discovery during the period ending October 16, 2009. Oral argument in the instant case was set for December 16, 2009. Pursuant to Federal Rule of Civil Procedure 56(f), Plaintiff could have, but did not, show by affidavit why she was unable to present facts essential to justify her opposition to the motion. Plaintiff was obligated,

9

### A.    Liberty Mutual's Rescission of the Policy

"It is the well-settled law of [Michigan] that where an insured makes a material misrepresentation in the application for insurance, including no-fault insurance, the insurer is entitled to rescind the policy and declare it void ab initio.  Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer.  Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327, 330, 586 N.W.2d 113 (1998). "Rescission is justified in cases of innocent misrepresentation if a party relies upon the misstatement, because otherwise the party responsible for the misstatement would be unjustly enriched if he were not held accountable for his misrepresentation." *Lash v. Allstate Ins. Co*., 210 Mich. App. 98, 103, 532 N.W.2d 869 (1995). *See also Wheatonn v. Geico Ins. Co.*, No. 265338, 2006 WL 740080 at * 4  (Mich. Ct. App. March 23, 2006) (noting that a misrepresentation need not be intentional for an insurer to raise the misrepresentation as a basis for rescission and that "no duty is owed to the insured to investigate or verify representations or to discover intentional misrepresentations.") It is equally clear that "an insurer does not owe a duty to the insured to investigate or verify that individual's representations or to discover intentional material misrepresentations." *Hammoud v. Metropolitan Prop. and Cas. Ins. Co*., 222 Mich. App. 485, 489, 563 N.W.2d 716 (1997).  Finally, "a fact or representation in an application is 'material' where communication of it would have had the effect of 'substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium.'" *Oade v. Jackson Nat'l Life Ins. Co.*

---

pursuant to Federal Rule of Civil Procedure 56(e)(2), to respond by affidavit or otherwise showing genuine issues for trial. Plaintiff has not presented sufficient evidence in opposition to Liberty Mutual's motion to create a genuine issue of material fact.

*of Michigan*, 465 Mich. 244, 253, 632 N.W.2d 126 (2001) (discussing materiality in the context of

misrepresentations made in an application for life insurance) (quoting *Keys v. Pace*, 358 Mich. 74,

82, 99 N.W.2d 547 (1959)).

Plaintiff relies on *Lake States, supra*, and *Farmers Ins. Exch. v. Anderson*, 206 Mich. App.

214, 520 N.W.2d 686 (1994) for the proposition that Liberty Mutual had a duty in this case to

discover the misrepresentation because it was "ascertained easily."[3]  However, the duty to discover

easily ascertainable fraud was imposed by the courts in *Lake States* and *Farmers*  because the claims

for optional no-fault automobile coverage  (insurers can never use fraud as a basis to deny statutorily

mandated minimum coverage to innocent third parties, MCL § 257.520(f)(1)) were made by

innocent third parties, not by the insured who made the misrepresentation.    These policy

considerations are not at play where, as here, the claimant is the insured who made the

misrepresentation. *Cf. Hammoud, supra,* (holding that the duty to discover fraud that is "easily

ascertained" is not imposed where the claimant is the insured and not an innocent third party);

*United Security Ins. Co. v. Comm'r of Ins.*, 133 Mich. App. 38, 44, 348 N.W.2d 34 (1984)

---

[3] Plaintiff argues that her affirmative answer to question 13 on the application, indicating that she
had a claim or loss in the previous five years (but not providing any detail of such loss) put Liberty
Mutual on notice of her prior claims history and should have caused them to question and verify her
negative response to question 3.  This in part forms the basis for her claim that her misrepresentation
was "easily ascertainable."  Plaintiff offers no evidence, either by way of affidavit or documentary
support, to support her conjecture that Liberty Mutual knew that she had made prior claims.  In any
event, this is irrelevant to the question of whether she had been denied payment of a claim, a
separate and distinct question on the application to which Plaintiff unquestionably answered "no."
(Mot. Ex. A.)  As counsel for Liberty Mutual pointed out at the hearing, evidence of a claim or loss
is often of less significance to an underwriter than evidence of the denial of a claim.  It is Plaintiff's
misrepresentation as to her prior claim denial that formed the basis for Liberty Mutual's rescission
of the policy.  However, because Liberty Mutual had no duty to Plaintiff to investigate on the facts
of this case, this Court need not resolve the issue of whether Liberty Mutual could easily have
ascertained the existence of the State Farm denial.

(recognizing that the duty to investigate is premised upon a duty owed to potential victims of the

insured, and that the insurer retains its remedies against an insured for the latter's misrepresentation).

Liberty Mutual had no duty to Plaintiff to investigate the misrepresentation she made in her

application for insurance.

Plaintiff further argues that she did not know that State Farm had denied her June 2006 claim

when she submitted her December 26, 2007 application to Liberty Mutual.[4]  Putting aside the sheer

implausibility of this claim, the intentional nature of Plaintiff's misrepresentation is not material.

While *Hammoud* and *United Securities* involved intentional misrepresentations by the insured, *Lash*

instructs that rescission is justified even in the case of an innocent misrepresentation where the

insurer relied on the misrepresentation in accepting the risk.  Moreover, neither *Hammoud* nor

*United Securities* limited their holdings to cases of intentional misrepresentation and in fact held that

the insurer had no duty to "investigate or verify [an] individual's representations **or** to discover

intentional material misrepresentations."  *Hammoud, supra* at 489 (emphasis added).

---

[4] There is great question whether Plaintiff's misrepresentation regarding her claim with State Farm
was innocent.  The letter from State Farm to Plaintiff rescinding her policy and denying her claim,
indicates that it was sent to Plaintiff via certified mail on April 17, 2007. (Mot. Ex. C.)  Moreover,
Plaintiff must have been aware, based on her numerous phone calls with State Farm claims adjustors
seeking to interview her under oath regarding that claim, that there was a question with respect to
coverage. (Mot. Ex. G, Johnson Aff. ¶¶ 9, 10; Resp. Ex. E, Brooks Aff. ¶¶ 6-8.)  Plaintiff states that
State Farm did pay approximately $3,000 toward the denied claim, but does not provide any
documentation to support this claim. (Resp. Ex. E, Brooks Aff. ¶ 9.)  Given the fact that, as Plaintiff
admits, she never did appear for an examination under oath, and the fact that State Farm did not
ultimately pay the claim, it is difficult to accept Plaintiff's statement (unsupported by any
documentary evidence) that she was not aware until August 2008, almost two years later, that State
Farm had denied her claim. (*Id.*)  Thus, there is great question, even were this fact material, whether
Plaintiff's response to Liberty Mutual's motion creates a genuine issue as to her awareness of this
denial on the date of her application to Liberty Mutual.  However, as *Lash* makes clear, the
innocence, or lack thereof, of her representation does not affect Liberty Mutual's right to rescind.

In *General Motors Acceptance Corp. v. Titan Ins. Co. and Towner,* No. 244722, 2004 WL 2256170 (Mich. Ct. App. Oct. 7, 2004) (unpublished), the court analyzed these issues on facts strikingly similar to the instant case. In *Titan*, defendant Towner's license was suspended on March 15, 2001 after a default judgment was entered against him for failure to appear for a speeding ticket. On March 26, 2001, Towner applied for insurance coverage with Titan on his new Buick Park Avenue which was financed through GMAC. *Id.* at * 1.  On April 24, 2001 GMAC filed a complaint against Towner seeking repossession of the Buick for failure to make payments. *Id.*  On April 30, 2001, the Buick was stolen and Towner made a claim with Titan.  Titan notified Towner and GMAC that it was rescinding the policy and denying the claim because Towner had represented on his insurance application that he did not have a suspended or revoked license. *Id.*  GMAC amended its complaint to add Titan as a lienholder under the policy covering the Buick.

The trial court entered judgment in favor of GMAC, holding that under *Lake States*, *supra*, "Titan was required to verify the status of Towner's license because that information was easily ascertainable." *Id.* at * 2.  The court of appeals reversed, first rejecting GMAC's claim that it was an innocent third party and holding that when innocent third parties were not involved, "the insurer owed no duty *to the insured* to discover the latter's intentional material misrepresentation." *Id.* at * 3 (quoting *United Security, supra* at 45) (emphasis in original).  The court of appeals remanded the case because it found that questions of fact remained as to whether Towner's license had actually been suspended (i.e. whether the representation in fact was false), and whether or not Towner knew, at the time he completed application, that his license had been suspended. *Id.* at * 5.  The fact of Towner's knowledge of his suspension was material because if the representation had been innocent, rescission would be appropriate under *Lake States* and *Lash* only if Titan actually relied on the

13

misrepresentation when it entered into the contract.  The court held that these material facts would demonstrate whether the rule set forth in *Lash* and *Lake States* applied: "'[R]escission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer.'" *Id*. at * 6 (quoting *Lash, supra).* If reliance is established, the intentional nature of the misrepresentation is immaterial.  If the representation had been intentional, then rescission clearly would have been appropriate under *Hammoud* and *United Securities* regardless of reliance.[5]

There is no question in the instant case that State Farm denied Plaintiff's June 2006 claim and thus that the December 26, 2007 misrepresentation to the contrary was false.  Also, as discussed more fully below, the unrebutted Cape affidavit, and the letter to Plaintiff rescinding the policy, establish that Plaintiff's misrepresentation as to her prior State Farm denial were material to, and relied upon by, Liberty Mutual when it issued Plaintiff the Policy.  Accordingly, Plaintiff's claim that she did not know about the State Farm denial at the time she completed the Liberty Mutual application, in addition to being implausible, does not create a genuine issue of material fact.

Plaintiff also argues that the misrepresentation was not material to Liberty Mutual.  *Oade, supra,* instructs that a fact or representation made in an insurance application is material if it would have affected the underwriter's decision to issue the policy or to charge a higher premium.  Liberty Mutual offers the Affidavit of Ms. Cape in support of its assertion that the representation as to denial of prior claims would have altered the underwriting decision: "Failure to disclose the [State Farm denial] on the Supplemental Application was material and would have affected Liberty Mutual's decision to issue the policy to Doreena Brooks."  (Mot. Ex. J, Cape Aff. ¶ 4.)  "Liberty Mutual

---

[5] On remand, the trial court, on stipulation of the parties, granted Titan's motion for summary disposition. *GMAC v. Titan Ins. Co. and Towner*, No. 01-70236, 2006 WL 2662390 (Mich. Cir. Ct. April 28, 2006) (unpublished).

14

would not have written this insurance policy to Doreena Brooks if true and correct information

regarding State Farm's prior denial of her claim had been disclosed at the time of her application

with Liberty Mutual." (*Id.* ¶ 5.) Plaintiff offers nothing to contradict this evidence other than

conjecture in her brief that had State Farm denied the prior claim because of a failure to cooperate

with the investigation rather than for fraud, Liberty Mutual might still have issued her the policy.

(Resp. 6-7.) However, Plaintiff offers no evidence, by way of affidavit or otherwise, that this in fact

represents Liberty Mutual's underwriting guidelines. More importantly, this assertion is directly

contradicted by Liberty Mutual's own underwriter's affidavit, Ms. Cape, who states that Liberty

Mutual would have declined to issue the Policy had it known of the State Farm claim denial. (Mot.

Ex. J, Cape Aff. ¶ 5.)[6] There is no genuine issue of fact as to whether Plaintiff's misrepresentation

---

[6] Plaintiff never addresses or responds in any way to the Cape Affidavit. Plaintiff attempts to create an issue of fact by suggesting that Liberty Mutual might not have denied her claim (i.e. that the misrepresentation was not material) had the State Farm denial been for reasons other than fraud. (Resp. 10.) However, determination of this fact is not material and there is no genuine issue as to whether the State Farm denial was based, at least in part, on fraud.

    First, it is clear from Ms. Cape's affidavit that it was Plaintiff's misrepresentation as to the *existence* of the State Farm denial, not its basis or validity, that would have altered Liberty Mutual's decision to issue the Policy to Plaintiff. (Mot. Ex. J, Cape Aff. ¶ 4-5.) This is further supported by Liberty Mutual's October 9, 2008 letter to Plaintiff, informing her of the rescission and denial and explaining that it was based upon her failure to disclose the fact that State Farm had denied her previous claim. (Mot. Ex. F.) Liberty Mutual's right to rescind the contract based on this misrepresentation derives from the contract itself, section 2 of the Conditions section, which gives Liberty Mutual the right to declare the policy null and void *ab initio* based upon a material false statement of fact in the application. (Mot. Ex. B, Sections I and II - Conditions, p. 15.) While Ms. Cape states that *additionally*, based upon the denial for fraud, Plaintiff would have been ineligible for coverage under the Liberty Mutual guidelines, this does not imply that Liberty Mutual would not have declined to issue the policy absent fraud on the State Farm claim. In relying on the underwriting guidelines as to eligibility (Resp. Ex. I), Plaintiff confuses eligibility with Liberty Mutual's right under the contract to rescind based on a misrepresentation of material fact.

    Second, it is clear, based upon the letter sent to Plaintiff by State Farm denying her claim, and further supported by the Johnson Affidavit, that the State Farm denial was in fact based in part on fraud. (Mot. Ex. C; Ex. G, Johnson Aff. ¶ 14.) Plaintiff offers no evidentiary support to dispute this. Plaintiff offers nothing, by way of affidavit or otherwise, to support her statement that her

15

as to her prior State Farm denial was material to Liberty Mutual's decision to issue Plaintiff the

Policy.

B.      Plaintiff's Unjust Enrichment

In Michigan, the elements for a valid claim of unjust enrichment are: (1) the receipt of a

benefit from Plaintiff and (2) an inequity resulting to the Plaintiff because of the retention of said

benefit by Defendant. *Barber v. SMH, Inc.*, 202 Mich. App. 366, 375, 509 N.W.2d 791 (1993)

(citation omitted).  In the instant case, Liberty Mutual expended sums in investigating Plaintiff's

claim, and advanced her sums on the claimed loss, before it confirmed that she had made a material

misrepresentation in the application.  Liberty Mutual properly rescinded Plaintiff's policy based on

her misrepresentation as to the prior State Farm denial, and fully refunded Plaintiff her premium

payments.  Plaintiff, who received these monies from Liberty Mutual based on her own (likely

intentional) misrepresentation in procuring the contract, has been unjustly enriched.

Plaintiff argues that as early as July 31, 2008, Liberty Mutual "had concerns regarding the

coverage that [Plaintiff] was entitled to." (Resp. 7.)  Plaintiff relies on the Claim Status report which

indicates that as of July 31, 2008, Liberty Mutual investigators had discovered that "we may have

some misrep in the policy application." (Resp. Ex. B.)  Plaintiff implies that somehow this

undercuts Liberty Mutual's unjust enrichment argument, although Plaintiff does not explain this

conclusion.  However, Liberty Mutual responds that its investigation was ongoing and incomplete

---

misrepresentation was not material to Liberty Mutual.  The relevant question on the application did
not ask if Plaintiff had been denied a claim based on fraud, it asked only if Plaintiff had been denied
a claim.  Clearly, Plaintiff's statement that she had not been so denied was a misrepresentation and
entitled Liberty Mutual to rescind the Policy.  The inquiry is academic in any event because the clear
and uncontroverted evidence is that State Farm denied the claim, at least in part, based on fraud and
misrepresentation.

and it continued to advance sums to Plaintiff while it was completing its investigation.  (Reply 4.)

Whether Liberty Mutual was reasonable in taking three months to finally decide to rescind the

contract is not relevant to the ultimate question of whether Plaintiff was unjustly enriched by the

payments made by Liberty Mutual on a policy that was rightfully rescinded.  If Liberty Mutual

properly rescinded the contract then the "entire insurance is null and void and all claims thereunder

[are] forfeited."  (Mot. Ex. C, Applicant Authorization.)

Liberty Mutual fully refunded Plaintiff's premium payments under the contract.  (Mot. Ex.

K.) Plaintiff cashed the refund check. The  payments in the amount of $30, 838.03 made by Liberty

Mutual to Plaintiff under the terms of the rescinded contract constitute unjust enrichment to Plaintiff.

## IV.      CONCLUSION

The Court GRANTS Liberty Mutual's Motion for Summary Judgment and awards Liberty

Mutual $30,838.03, the amount of Plaintiff's unjust enrichment due to her misrepresentation.


IT IS SO ORDERED.



        s/Paul D. Borman
        PAUL D. BORMAN
        UNITED STATES DISTRICT JUDGE


Dated:  December 30, 2009

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
December 30, 2009.

        s/Denise Goodine
        Case Manager